UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA M.,[1] | : | Case No. 2:25-cv-00203 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

DECISION AND ORDER

Plaintiff's application for Disability Insurance Benefits is before this Court for the

third time. Plaintiff appeals Defendant's finding that she was not under a "disability" as

defined in the Social Security Act prior to October 6, 2021. Plaintiff seeks an order

remanding this matter to the Commissioner for the award of benefits or, in the alternative,

for further proceedings. The Commissioner asks the Court to affirm the non-disability

decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's

decision.

I.      BACKGROUND

Plaintiff asserts that she was under a disability from the alleged onset date of

December 30, 2016 through October 5, 2021. During that time, she was considered a

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

"younger person." 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 8) is summarized in the decision of the Administrative Law Judge (ALJ) ("Third ALJ Decision," Doc. No. 8-13 at PageID 803-29), Plaintiff's Statement of Errors ("SE," Doc. No. 11) and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.     STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of

fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

3

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    Summary Of The Administrative Record

#### 1.    First ALJ decision

Plaintiff filed an application for Disability Insurance Benefits in June 2018. Her claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, ALJ Matthew Winfrey concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. ("First ALJ Decision," AR, Doc. No. 8-9 at PageID 617-52.) ALJ Winfrey found that Plaintiff had the severe impairments of left shoulder degenerative joint disease, left elbow ulnar nerve entrapment, bilateral carpal tunnel syndrome, atherosclerotic heart disease, ischemic cardiomyopathy, hypertension, obstructive sleep apnea, restrictive lung disease, obesity, and depressive disorder. (*Id.* at PageID 622-23.) ALJ Winfrey formulated an RFC with a reduced range of light exertion and the following mental limitations: "[Plaintiff] retains the capacity to perform routine duties with work that is not at a production rate pace such as with assembly line work. She can tolerate occasional changes in duties and work setting." (*Id.* at PageID 635.) In his RFC analysis, ALJ Winfrey evaluated the opinion of consultative psychologist Michele Evans, Ph.D. as follows:

> The consultative psychologist's opinions from January 2019 are persuasive in assessing [Plaintiff's] mental functional limitations, restrictions, and residual functional capacity as of the alleged onset date of disability (Exhibit 7F/6-7). However, I did not preclude [Plaintiff] from performing complex tasks given her education. I interpret this source's opinions as reflecting no more than mild limitations in interacting with others, which is consistent with and supported by the totality of the evidence, as discussed above, and did not assess functional limitations and restrictions in this area. I interpret this source's opinions as reflecting moderate limitations in concentrating, persisting, or maintaining pace, which is consistent with and supported by the totality of the evidence, as discussed above, and assessed corresponding functional limitations and restrictions in this area. I do not find that [Plaintiff] is as limited in adapting or managing oneself as this source suggests given her demonstrated good judgment at times (Exhibit 4F/3, 8, 11, and 14), as well as her denial of work quality and speed problems, and history of work absenteeism and tardiness problems (Exhibit 7F/3), as discussed above. However, I did find that [Plaintiff] has moderate limitations in adapting or managing oneself, and accommodated this source's opinions that [Plaintiff] has some problems with handling work pressures and stress by limiting her to work with routine duties, no production rate pace, and no more than occasional changes. Accordingly, the consultative psychologist's opinions from January 2019 are overall persuasive in assessing [Plaintiff's] mental functional limitations, restrictions, and residual functional capacity as of the alleged onset date of disability.

(*Id.* at PageID 844-45.)

The Appeals Council denied Plaintiff's request for review of that decision (AR, Doc. No. 8-9 at PageID 653-55), and Plaintiff filed her first action with this Court.[2] After full briefing, the Court remanded the case to the Commissioner under Sentence Four of 42 U.S.C. § 405(g). ("First Remand Order," AR, Doc. No. 8-9 at PageID 659-72.) Magistrate Judge Jolson identified reversible error in the ALJ's weighing of Dr. Evans' opinions, specifically in his analyses of the supportability and consistency factors. (*Id.* at

---

[2] Assigned to Magistrate Judge Kimberly A. Jolson, Case Number 2:21-cv-00031.

PageID 669-72.) Regarding supportability, Magistrate Judge Jolson pointed out that the

ALJ found that Dr. Evans' opinions were persuasive but "rejected Dr. Evans' conclusion

that Plaintiff would struggle with complex instructions 'given her education.' (Tr. 39)."

(*Id.* at PageID 670.) According to Magistrate Judge Jolson, the ALJ's supportability

analysis was "lacking" because the ALJ "did not explain how a high school education

undercuts Dr. Evans' conclusion with regard to Plaintiff's limitation in this area." (*Id.* at

PageID 670-71.) As for consistency, Magistrate Judge Jolson stated:

> [T]he ALJ did not explain how Dr. Evans' conclusion was contrary to other
> medical records, which was required when discounting Dr. Evans' opinion.
> Still more, the state agency reviewers, whom the ALJ credited, found that
> Plaintiff would be "moderately limited" in her ability to carry out detailed
> instructions. (See Tr. 101). This conclusion is similar to Dr. Evans', but the
> ALJ made no mention of it when rejecting Dr. Evans' opinion.

(*Id.*) Magistrate Judge Jolson determined: "Given that Dr. Evans' conclusion has this

support in the record, the ALJ's consistency analysis was lacking." (*Id.*) Judge Jolson

further concluded: "At base, the ALJ did not 'build an accurate and logical bridge

between the evidence and his conclusion' regarding the types of instruction Plaintiff

could follow in a work setting." (*Id.* at PageID 672.) Magistrate Judge Jolson therefore

reversed the Commissioner's non-disability finding and remanded the case pursuant to

Sentence Four of § 405(g). (*Id.*)

The Appeals Council vacated the ALJ's decision and remanded the case "for

further proceedings consistent with the order of the court." (AR, Doc. No. 8-9 at PageID

676.) The Appeals Council directed the ALJ to "offer [Plaintiff] the opportunity for a

6

hearing, take any further action needed to complete the administrative record and issue a new decision." (*Id.*)

### 2. Second ALJ decision

ALJ Winfrey held another hearing and concluded that although Plaintiff was not under a "disability" as defined in the Social Security Act prior to October 6, 2021, she did become disabled beginning on that date. ("Second ALJ Decision," AR, Doc. No. 8-14 at PageID 857-98.) Prior to October 6, 2021, ALJ Winfrey again concluded that Plaintiff had several severe impairments, including depressive disorder. (*Id.* at PageID 863.) He formulated an RFC that limited Plaintiff to a reduced range of sedentary work with the following mental limitations: "[Plaintiff] retains the capacity to perform simple, routine tasks with no more than occasional changes in work duties and setting and no production rate pace such as found with assembly line work. She is limited to no more than occasional interaction with members of the general public." (*Id.* at PageID 876-77.) ALJ Winfrey evaluated the opinion of consultative psychologist Dr. Evans as follows:

> The consultative psychologist's opinions from January 2019 are overall persuasive in assessing [Plaintiff's] mental functional limitations, restrictions, and residual functional capacity as of the alleged onset date of disability (Exhibit 7F/6-7). However, given that [Plaintiff] concurrently needed the meaning of a word explained, as noted above, the undersigned finds moderate limitations in understanding, remembering, or applying information reasonably justifying the corresponding functional limitations and restrictions to simple tasks. Given [Plaintiff's] concurrent presentation as tearful with poor eye contact, as noted above, the undersigned finds that the evidence documents moderate limitations in interacting with others reasonably justifying the corresponding functional limitations and restrictions on public interaction set forth above. The undersigned interpret [sic] this source's opinions as reflecting moderate limitations in concentrating, persisting, or maintaining pace, which is consistent with and supported by the totality of the evidence, as discussed above, and assessed

> corresponding functional limitations and restrictions to routine tasks with no production rate pace such as assembly line work. The undersigned does not find that [Plaintiff] is as limited in adapting or managing oneself as this source suggests given her demonstrated good judgment at times (Exhibit 4F/3, 8, 11, and 14), as well as her denial of work quality and speed problems, and history of work absenteeism and tardiness problems (Exhibit 7F/3), as discussed above. However, the undersigned did find that [Plaintiff] has moderate limitations in adapting or managing oneself, as discussed above, and accommodated this source's opinions that [Plaintiff] has some problems with handling work pressures and stress by limiting her to work with no more than occasional changes in duties and setting. Accordingly, the consultative psychologist's opinions from January 2019 are overall persuasive in assessing [Plaintiff's] mental functional limitations, restrictions, and residual functional capacity as of the alleged onset date of disability.

(*Id.* at PageID 885.)

After the ALJ's decision became final, Plaintiff filed her second action with this Court and challenged the unfavorable portion of the ALJ's decision.[3] The parties thereafter jointly moved for a remand. (Joint Motion, Doc. No. 8-14 at PageID 901-02.) In their Joint Motion, the parties stipulated to the following:

> Upon remand, the Appeals Council will vacate the unfavorable part of the Administrative Law Judge's decision. The Commissioner will develop the administrative record as necessary to determine whether Plaintiff is disabled within the meaning of the Social Security Act during the period prior to the established period of disability, hold a new hearing, and then issue a new decision.

(*Id.* at PageID 901.) Magistrate Judge Peter B. Silvain, Jr. granted the parties' motion and ordered, *inter alia*, that the matter be remanded to Commissioner under Sentence Four of § 405(g) "for further consideration consistent with this Order and the parties' stipulation . . . ." ("Second Remand Order," Doc. No. 8-14 at PageID 900.)

---

[3] Assigned to Magistrate Judge Peter B. Silvain, Jr., Case Number 2:23-cv-00979.

The Appeals Council vacated and remanded the unfavorable portion of the Second ALJ Decision pursuant to Judge Silvain's Order. (AR, Doc. No. 8-14 at PageID 907-08.) In its Order, the Appeals Council directed the ALJ to resolve the following issue:

> The hearing decision does not comply with the prior remand from the court. This case was remanded due to inadequate evaluation of supportability and consistency of the opinion from the consultative psychological examiner Michele Evans, Ph.D. (Exhibits 7A and 7F). On remand, the Administrative Law Judge found Dr. Evans' opinion overall persuasive but did not adopt all the limitations opined by Dr. Evans (Decision, page 26). In doing so, the Administrative Law Judge did not specifically explain how the supportability factor was considered. Dr. Evans provided supporting information for her opinion throughout the report (Exhibit 7F). As for the consistency factor, the Administrative Law Judge noted [Plaintiff] having good judgment at times and denying work quality and speed problems as well as absenteeism. However, the Administrative Law Judge does not explain why Dr. Evans' opinion that [Plaintiff] is unlikely to be able to deal with stress and pressures effectively is not adopted despite finding the opinion overall persuasive. Therefor further consideration of the opinion is necessary.

(*Id.* at PageID 907.) The Appeals Council directed the ALJ to consider the medical opinion evidence and Plaintiff's maximum RFC, and to "provide appropriate rationale with specific references to evidence of record in support of the assessed limitations …." (*Id.* at PageID 908.)

### 3.    Third ALJ decision

ALJ Jeannine Lesperance held a hearing and issued a third unfavorable decision in this case, concluding that Plaintiff was not under a "disability" as defined in the Social Security Act prior to October 6, 2021. ("Third ALJ Decision," Doc. No. 8-13 at PageID 803-29). After the ALJ's decision became final, Plaintiff filed what is now her third action with this Court under 42 U.S.C. § 405(g).

9

## B. ALJ Lesperance's Factual Findings

ALJ Lesperance was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, ALJ Lesperance considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. ALJ Lesperance made the following findings of fact:

Step 1:      ALJ Lesperance declined to make a finding about whether Plaintiff engaged in substantial gainful activity during the relevant time period.

Step 2:      From the alleged onset date of December 30, 2016 through October 5, 2021, she had the following severe impairments: coronary artery disease (CAD), status post double bypass; left shoulder degenerative joint disease; bilateral carpal tunnel syndrome; bilateral trigger thumbs; restrictive lung disease; and obesity.

     She had the nonsevere impairments of obstructive sleep apnea, iron deficiency anemia, lymphadenitis, pneumonia, plantar warts, Achilles tendinitis, and depression.

Step 3:      She did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:      Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: occasionally stoop, kneel, crouch[,] and climb ramps and stairs; frequently balance; never climb ladders[,] ropes[,] or scaffolds or crawl; never work at unprotected heights; should avoid temperature extremes, humidity, vibration, and atmospheric conditions as those are rated and defined in the Selected Characteristics of Occupations (SCO); could occasionally push/pull at the light level; and occasionally reach overhead, frequently reach in front/laterally[,] and frequently handle, finger[,] and feel.

     ALJ Lesperance made no finding regarding Plaintiff's past relevant work.

10

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.

(Third ALJ Decision, Doc. No. 8-13 at PageID 807-22.) These findings led the ALJ to conclude that Plaintiff did not meet the definition of disability and so was not entitled to benefits. (*Id.* at PageID 822.)

**C.     Consultative Psychologist Michele Evans, Ph.D.**

Michele Evans, Ph.D. performed a consultative psychological evaluation on behalf of the Disability Determination Services in January 2019. (AR, Doc. No. 8-7 at PageID 435-41.) In a narrative report, Dr. Evans documented Plaintiff's subjective complaints and her mental status examination findings. (*Id.* at PageID 435-40.) Dr. Evans concluded that her findings supported a diagnosis of unspecified depressive disorder. (*Id.* at PageID 439-40.)

When asked to assess Plaintiff's mental abilities and limitations in the areas of maintaining effective social interactions and sustaining concentration, persistence, and pace, Dr. Evans restated many of Plaintiff's subjective complaints and the findings that she documented during the mental status examination. (AR, Doc. No. 8-7 at PageID 440-41.) In the area of understanding, carrying out, and remembering one-step and complex instructions, Dr. Evans wrote:

> [Plaintiff] reported that she is able to understand, remember, and follow one-step instructions; and there was no indication during this evaluation that she is unable to do so. When asked if she can understand complex instructions, she said, "I think so. I haven't had any in a couple years." When asked if she can remember and follow complex instructions, she stated, "I think so, but again I haven't had any in two years." Her ability to

11

do this could be compromised given her performance during a brief assessment of cognitive functioning that was part of this evaluation. [Plaintiff] is a high school graduate. She denied any history of substantial academic difficulties. She stated that she was able to understand what was expected of her at her jobs. The term cues had to be explained for [Plaintiff]. Here, she was able to recall only five digits forward and only three digits backward. She recalled all three of the words presented to her after a brief delay. She was able to correctly complete a serial seven subtraction task. She was able to correctly respond to some arithmetic problems.

(*Id.*)

As for Plaintiff's abilities and limitations in dealing with normal pressures in a competitive work setting, Dr. Evans wrote:

[Plaintiff] reported that dealing with stress and pressures is difficult for her. When asked how she deals with stress and pressures, she said, "I wanna give up, but the other part of me that keeps trying and trying, it's like I'm fighting myself." [Plaintiff] denied having ever had a problem with tardiness or absenteeism. She said that she is "probably" able to seek services in the community on her own, but her son helps her do so. [Plaintiff's] ability to respond appropriately to work pressures in a work setting would be affected by her mental health symptomatology. Her mental health symptomatology makes it unlikely that she would be able to deal with stress and pressures effectively.

(AR, Doc. No. 8-7 at PageID 441.)

ALJ Lesperance evaluated Dr. Evans' opinions in her discussion of Plaintiff's mental impairments at Step 2, specifically in her discussion of the "Paragraph B" criteria. (Third ALJ Decision, Doc. No. 8-13 at PageID 810-14.) In the first area of understanding, remembering, or applying information, the ALJ addressed Dr. Evans' opinion as follows:

Dr. Evans summarized [Plaintiff's] statements and indicated that her ability to perform complex tasks "*could be compromised given her performance during a brief assessment of cognitive functioning.*" This appears to

12

reference her slower pace at some tasks, and possibly slight deficit on backward digit span (4 is normal, she did 3). The District Court Magistrate appeared to believe that Dr. Evan's reference to a high school education was some evidence of *deficit* in this area; however, a high school education is considered a full education under our program, and only less than a high school education is "*limited*" or "marginal," to potentially support significant deficits. Therefore, I interpret Dr. Evan's reference to a high school education as countervailing evidence to [Plaintiff's] deficits on testing, along with her notation that [Plaintiff] indicated that she thought she could perform simple, detailed and complex tasks but was "not sure," and her history of no academic difficulties, as well as her ability to recall 3/3 words and perform serials sevens. 20 CFR 416.964 indicates that, as a matter of law, having a high school education typically means the educational ability to do semiskilled through skilled work. In sum, what Dr. Evan's has done is simply summarize the results of the evaluation. She does not actually offer any "medical opinion" regarding [Plaintiff's] ability to understand, remember and apply instructions in functional terms. A medical opinion is a statement from a medical source about "*what you can still do despite your impairments.*" 20 CFR 404.1513. The only possibly "opinion" I can glean here is that her ability to perform "complex" tasks "could be" compromised given her performance on some of the tests but there was no evidence that she could not perform 1-step tasks. I note, however, that (1) the statement about complex tasks is speculative, as Dr. Evans does not appear to have confidence, using the words "could be,"; and (2) [Plaintiff] was able to perform all the tests except for a slight deficit on digit span, but did some at a slow pace. Also, Dr. Evans does not use programmatic terms such as simple and detailed. Since there is a broad gap between 1-step tasks and complex (skilled work-related) tasks, and she does not offer opinions regarding simple tasks (that are more than one step) or detailed (semiskilled) tasks, her summary here is of limited utility. While it indicates [Plaintiff] can do 1 step tasks, and possibly might have difficulty with complex tasks, it does not say she cannot do other simple or detailed tasks. Moreover, the variable slowness noted here, as well as the slight deficit in digit span, does not support limits in simple tasks of more than one step or detailed tasks, nor is the possible limit on complex tasks either fully supported by her explanation or the collateral record, which does not indicate any cognitive deficits in terms of memory, attentiveness, alertness, or activity (see, generally, Exhibits 3F, 4F, 6F, 8F, 14F, 20F; note that 15F, 16F and 17F are duplicates of 9F, 10F, and 11F but were already permanently marked, thus could not be removed). [Plaintiff] denied problems in this area in a function questionnaire (Exhibit 4E). In addition, the record shows that [Plaintiff] was able to provide information about her health, describe her prior work history, generally follow instructions from

13

healthcare providers, comply with treatment outside of a doctor's office or hospital, respond to questions from medical providers, and there is no other mention of any significant issues with [Plaintiff's] short or long-term memory (E.g., Exhibits 3F/6, 20; 4F (duplicated in 5F); 24F/15). In sum, considering the evidence as a whole, I can find no more than a MILD limit in this domain given the slight deficit on backwards digit span. But otherwise, Dr. Evan's opinions are not persuasive to support any degree of limitation in this domain. Again, the evidence supports only a slight deficit in this area with generally normal functioning such that the overall functional deficit is not more that minimal.

(*Id.* at PageID 810-11.)

ALJ Lesperance addressed the other opinion at issue in her evaluation of the fourth area of adapting or managing oneself. (Third ALJ Decision, Doc. No. 8-13 at PageID 812-13.) The ALJ wrote:

The fourth functional area is adapting or managing oneself. In this area, [Plaintiff] had mild limitation. This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Regarding adapting and managing, Dr. Evans again summarized [Plaintiff's] own statements, then concluded that [Plaintiff's] ability to respond to work pressures would be affected, and her symptoms would make it "unlikely that she would be able to deal with stress and pressure effectively" (Exhibit 7F). This is not persuasive. Dr. Evans specifically points to [Plaintiff's] statements and reported symptoms as support here. In addition, I observe that [Plaintiff] was tearful at the consultative evaluation, which could be considered a stressful situation to some. Notwithstanding the foregoing however, [Plaintiff's] own statements of her symptoms, and even her tearfulness throughout (and apparently even before) the interview provide poor support for Dr. Evan's conclusion, because, as noted, the tearfulness was an anomalous presentation considering a preponderance of the evidence and, further, [Plaintiff's] own subjective reports are not consistent with the collateral record or even, fully, this exam, which, as noted, has many normal findings with limited abnormal findings. [Plaintiff] reported that dealing with stress made her chest hurt and cause her to feel "numbing pressure in my neck" (Exhibit 4E). Regarding the collateral record, the objective evidence, as noted, is mostly inconsistent with her reported symptoms, given that her mood, affect, alertness, orientation and other variable mental status findings are overwhelmingly normal throughout this record. Her course of treatment is

14

inconsistent with her reported symptoms because it is essentially absent, other than taking Zoloft prescribed by primary care. Further, she also acknowledged taking that medication since 1998, including during periods she was able to work. The record does not reflect any escalation of her care including increased or changing medications, referrals to psychiatric specialists for medication management, counseling, or inpatient/outpatient mental health treatment. Her stated symptoms as shared with Dr. Evans are not elsewhere reflected consistently in the record, though at times she reports sleep problems, and there are rare elevated personal health questionnaire (PHQ-9) self-survey scores (e.g. Exhibit 20F/5). [Plaintiff] does not consistently report precipitating or aggravating factors or medication side effects. Her daily activities, including raising a very young child who was four years old at the time of Dr. Evan's evaluation, and her on and off-reported work activity, are also not fully consistent with her reported symptoms. Considering the evidence as a whole, Dr. Evans' opinions, to the extent there are any, are not persuasive. For the above-noted reasons, they are mostly not well supported, at least in terms of finding even "moderate" limitations in any domain, and also mostly inconsistent with the record. Therefore, Dr. Evan's opinions are not persuasive to support finding a severe mental health impairment in the period under my review. The objective evidence in the record typically showed [Plaintiff] to have appropriate grooming and hygiene, no problem getting along well with providers and staff, normal mood and affect, and no problems with temper control. The evidence supports only a slight deficit in this area with generally normal functioning such that the overall functional deficit is not more that [sic] minimal.

(*Id.*)

The ALJ then summarized her conclusions and found Dr. Evans' opinions to be "unpersuasive." (Third ALJ Decision, Doc. No. 8-13 at PageID 813.) The ALJ acknowledged that Dr. Evans' opinions were "the result of her own observations, psychometric testing, a clinical interview, and a mental status evaluation." (*Id.*) However, the ALJ stated: "[A]s discussed above, I find Dr. Evans' statements, insofar as they can be considered opinions for agency purposes, unpersuasive." (*Id.*)

15

## IV.    LAW AND ANALYSIS

Plaintiff asserts one error: "The ALJ violated the law of the case by declaring Plaintiff's mental impairments nonsevere and asserting that the opinion of Dr. Evans is actually not an opinion at all, in an apparent effort to avoid complying with the Court's directive that the ALJ provide the requisite explanation for the omission of a particular mental limitation (opined by Dr. Evans) from the previously assessed mental RFC." (SE, Doc. No. 11 at PageID 1398.) For the reasons discussed below, the Court concludes that Plaintiff's asserted error is not well taken and therefore affirms the ALJ's decision.

### A.    ALJ Lesperance Did Not Err By Considering The Severity Of Plaintiff's Mental Impairments.

Plaintiff argues that "the only conflict to be resolved here is the conflict between the Commissioner's decision and the remand orders with which he has repeatedly failed to comply." (SE, Doc. No. 11 at PageID 1410.) Plaintiff challenges ALJ Lesperance's conclusions that Plaintiff had no "severe" mental impairments and, therefore, no mental limitations were warranted in the RFC. (*Id.* at PageID 1407-08.) According to Plaintiff:

> This, of course, is contrary to the prior explicit, repeated, and unchallenged finding that Plaintiff's mental impairment is severe and, at a minimum, restricts her to simple and routine tasks, with no production rate requirements, no more than occasional changes in duties and setting, and no more than occasional public interaction.

(*Id.*) Plaintiff asserts that these findings "were the law of the case and thus impermissibly disturbed." (*Id.* at PageID 1408.)

When this Court or the Appeals Council vacates a decision of the Commissioner and remands for further proceedings under Sentence Four of 42 U.S.C. § 405(g), the

16

general rule is that "the ALJ must consider all pertinent issues *de novo*." *Wyatt v. Comm'r of Soc. Sec.*, No. 1:16-cv-938, 2017 WL 3224666, at *5 (S.D. Ohio July 31, 2017) (Bowman, M.J.), *report and recommendation adopted*, No. 1:16-cv-938, 2017 WL 4349115 (S.D. Ohio Sept. 29, 2017) (Black, D.J.) (citing Hearings, Appeals, and Litigation Law Manual (HALLEX) I-2-8-18, *Administrative Law Judge Decision When Case Remanded By The Court*, 1993 WL 643058 (S.S.A. May 26, 2017); *Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570, 571 (6th Cir. 2003); 20 C.F.R. §§ 416.1455, 416.1477, 416.1481, 416.1484). Further, "[a]ny issues relating to the claim(s) may be considered by the … administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in the case." 20 C.F.R. § 403.983.

The Sixth Circuit also recognizes a "general rule that, on the remand of a case after appeal, it is the duty of the … agency from which appeal is taken[] to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions …." *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967). "Moreover, if the cause is remanded with specific directions, further proceedings in the . . . agency from which appeal is taken must be in substantial compliance with such directions; and if the cause is remanded for a specified purpose, any proceedings inconsistent therewith is error …." *Id.* However, while the ALJ "may not do anything expressly or impliedly in contradiction to the district court's remand order," the ALJ is not precluded "from acting in ways that go beyond, but are not inconsistent with, the district court's opinion." *Hollins v. Massanari*, 49 F. App'x 533, 536 (6th Cir. 2002).

17

Here, this Court's First and Second Remand Orders (collectively "Remand Orders") did not require ALJ Lesperance to make any specific factual or legal findings or foreclose review of any issue. She was therefore required to consider all relevant issues *de novo*. *Wireman*, 60 F. App'x at 571. Nevertheless, Plaintiff argues that the ALJ erred by reconsidering the severity of Plaintiff's mental impairments. Defendant disagrees. Both parties cite the same case from the United States District Court for the Eastern District of Michigan to support their positions. (SE, Doc. No. 11 at PageID 1409; Mem. In Opp., Doc. No. 12 at PageID 1418 (citing *Beatty v. Comm'r of Soc. Sec.*, No. 14-11550, 2015 WL 5693663, at *3 (E.D. Mich. Sept. 29, 2015) ("*Beatty II*").) The Court finds *Beatty II* to be instructive in a way that favors Defendant.

In *Beatty II*, the District Court construed its prior decision in *Beatty I* that had remanded Beatty's disability claim to the Commissioner. 2015 WL 5693663, at *1 (citing *Beatty v. Comm'r of Soc. Sec.*, No. 10-12034, 2011 WL 4407557, at *7 (E.D. Mich. Sept. 2, 2011), *report and recommendation adopted*, 2011 WL 4406331 (E.D. Mich. Sept. 22, 2011) ("*Beatty I*")). The question before the District Court in *Beatty I* was "whether the ALJ appropriately followed the test for determining whether drug addiction … materially contributed to [Beatty's] disability." 2011 WL 4407557, at *6. After reviewing the ALJ's decision and the record, the District Court concluded that "the ALJ failed to adequately explain his rationale and merely assumed that because [Beatty] was likely 'better' when not using marijuana, he was also, therefore not disabled." *Id*. at *7. The District Court remanded the matter to the Commissioner "so that specific medical opinions regarding the affect of [Beatty's] marijuana use on his depression can be obtained." *Id*.

18

On remand, the ALJ conducted a new hearing and issued a decision that denied Beatty's claim for continued disability benefits.[4] *Beatty II*, 2015 WL 5693663, at *1. According to the District Court, the ALJ made two findings upon remand. First, the ALJ "determined that [Beatty's] mental condition had medical improved and that [he] had regained the residual functional capacity … to perform a restricted range of work at all exertional levels." *Id*. Second, "[t]he ALJ also found that [Beatty's] history of marijuana use was not a contributing factor in the determination of disability." *Id*.

In *Beatty II*, Beatty argued that the *Beatty I* report and recommendation "decided the issue of whether [he] was disabled, and, consequently, the remand order itself only concerned the analysis of marijuana addiction." 2015 WL 5693663, at *1. Beatty further argued that the ALJ exceeded the scope of the District Court's remand order when it redetermined his impairments and disability status. *Id*.

The District Court rejected Beatty's argument. It explained that "as long as an issue was not finally decided in the District Courts, the ALJ can exceed the scope of a remand order and reconsider any evidence deemed appropriate in reaching a decision regarding a claim." *Beatty II*, 2015 WL 5693663, at *3. Therefore, "[a]s long as the facts were not affirmed [in *Beatty I*], the ALJ had the ability to go beyond the remand direction of determining marijuana addiction, so long as the findings were not 'inconsistent with' the opinion from the District Court, because the law of the case only becomes relevant to issues previously determined." (*Id*. (quoting *Hollins v. Massanari*, 49 F. App'x 533, 536

---

[4] Beatty had previously been awarded and received disability benefits, but the Commissioner later terminated them after finding that Beatty was no longer disabled.

(6th Cir. 2002)). The District Court held that the ALJ did not exceed the scope of the prior remand order because *Beatty I* "did not make any decision regarding the validity of the previous ALJ's initial listing determination regarding Plaintiff's disability status." *Beatty II*, 2015 WL 5693663, at *3.

Applying the reasoning in *Beatty II* here, the Court finds that ALJ Lesperance did not exceed the scope of this Court's Remand Orders. Magistrate Judge Jolson's March 2022 Remand Order did not expressly or implicitly affirm any of the facts concerning the merits of Plaintiff's impairments or RFC. (First Remand Order, AR, Doc. No. 8-9 at PageID 659-72.) Rather, Magistrate Judge Jolson "merely assumed" the facts so that she could made conclusions regarding Plaintiff's claims, which is not equivalent to making affirmative factual findings. *See Beatty II*, 2015 WL 5693663, at *3.

It is true that Magistrate Judge Jolson stated: "The Undersigned agrees that Dr. Evans' opinion has the support identified [by Plaintiff in her Statement of Errors]." (First Remand Order, AR, Doc. No. 8-9 at PageID 671.) But a review of the context of this statement shows that Magistrate Judge Jolson made it to support her conclusion that "[ALJ Winfrey's] consistency analysis was lacking" because it "did not explain how Dr. Evans' conclusion was contrary to other medical records." (*Id.*) Magistrate Judge Jolson did not affirmatively find that Dr. Evans' opinions were persuasive or warrant specific mental limitations in the RFC. Nor did Magistrate Judge Jolson direct the ALJ to make such a finding. Instead, Magistrate Judge Jolson directed the ALJ to better explain why she did not adopt Dr. Evans' opinion, given the consistency of Dr. Evans' opinion with other evidence of record.

20

Similarly, the Second Remand Order did not expressly or implicitly affirm any facts concerning the merits of the case. (Second Remand Order, Doc. No. 8-14 at PageID 900.) To the contrary, Magistrate Judge Silvain impliedly ordered a *de novo* review by ordering that the matter be remanded to the Social Security Administration "for further consideration consistent with this Order ***and the parties' stipulation***." (*Id.* (emphasis added).) The parties stipulated that on remand, the Appeals Council "will vacate the unfavorable part of the [ALJ's] decision" and the Commissioner "will develop the administrative record as necessary ***to determine whether Plaintiff is disabled*** within the meaning of the Social Security Act during the period prior to the established period of disability, hold a new hearing, and then issue a new decision." (AR, Doc. No. 8-14 at PageID 901 (emphasis added).) The Second Remand Order plainly permitted ALJ Lesperance to reconsider ALJ Winfrey's factual findings based on her own *de novo* review of the record.

Plaintiff also cites a case from the United States District Court for the Northern District of Ohio to argue that this Court's Remand Orders barred ALJ Lesperance from issuing new findings that contradicted ALJ Winfrey's previous findings. (SE, Doc. No. 11 at PageID 1407 (citing *Parsons v. Astrue*, No. 1:11-cv-01063, 2012 WL 3853184, at *6 (N.D. Ohio June 13, 2012), *report and recommendation adopted sub nom. Parsons v. Comm'r of Soc. Sec.*, No. 1:11-cv-01063, 2012 WL 3852927 (N.D. Ohio Sept. 5, 2012)).) However, *Parsons* is distinguishable. The remand order in *Parsons* directed the Commissioner to hold a supplemental hearing – not a *de novo* hearing – that included "vocational expert testimony concerning the jobs which accommodate plaintiff's

21

manipulative limitations." 2012 WL 3853184, at *7. The *Parsons* court held that because the ALJ was directed "to clarify, through supplemental vocational testimony, the effect of the ***previously assessed*** limitations on the ability of [the plaintiff] to perform work," the remand order did not allow a *de novo* assessment of whether or not the plaintiff had manipulative limitations. *Id.* (emphasis in original). Here, by contrast, the Commissioner was not directed to hold a supplemental hearing to clarify the effect of previously assessed limitations. Instead, for the reasons stated, neither Magistrate Judge Jolson nor Magistrate Judge Silvain made affirmative factual findings that were binding on remand.

Accordingly, the Court concludes that because its prior Remand Orders did not make any affirmative factual findings regarding Plaintiff's mental impairments, ALJ Lesperance did not err by conducting a *de novo* review upon remand.

### B. ALJ Lesperance Complied With This Court's Remand Orders

Plaintiff also argues that ALJ Lesperance impermissibly disregarded the law of the case by "assert[ing] that the opinion of Dr. Evans, which contains the limitation that was erroneously left out of the RFC and thus necessitated remand, is 'possibly' not even a medical 'opinion' at all." (SE, Doc. No. 11 at PageID 1408.) The Court disagrees with this assertion and finds both that the ALJ evaluated Dr. Evans' opinions in compliance with the applicable regulations, and that her analysis is supported by substantial evidence.

ALJs are required to analyze the persuasiveness of "all of the medical opinions" in the record. 20 C.F.R. § 404.1520c. A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R.

22

§ 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) …." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar.

20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[5] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

---

[5] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

24

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

On remand, ALJ Lesperance considered Dr. Evans' opinions with respect to four areas of mental functioning referred to as "paragraph B" criteria. (Third ALJ Decision, Doc. No. 8-13 at PageID 810-13.) In the First Remand Order, Magistrate Judge Jolson specifically directed the Commissioner to reconsider Dr. Evans' opinions with respect to two of these four areas: (1) understanding, remembering or applying information (e.g.,

the ability to understand and perform complex instructions), and (2) adapting or managing oneself (e.g., the ability to handle work pressures or stressors).[6]

In the first functional area (understanding, remembering or applying information), the ALJ found that Plaintiff had "no more than a mild limitation." (Third ALJ Decision, Doc. No. 8-13 at PageID 810.) With regard to Dr. Evans' opinions, the ALJ explained:

> [W]hat Dr. Evans has done is simply summarize the results of the evaluation. She does not actually offer any "medical opinion" regarding the claimant's ability to understand, remember and apply instructions in functional terms. A medical opinion is a statement from a medical source about "*what you can still do despite your impairments.*" 20 CFR 404.1513. The only possibl[e] "opinion" I can glean here is that her ability to perform "complex" tasks "could be" compromised given her performance on some of the tests but there was no evidence that she could not perform 1-step tasks. I note, however, that … the statement about complex tasks is speculative, as Dr. Evans does not appear to have confidence, using the words "could be" …. In sum, considering the evidence as a whole, I can find no more than a MILD limit in this domain given the slight deficit on backwards digit span. But otherwise, Dr. Evans' opinions are not persuasive to support any degree of limitation in this domain.

(*Id*. at PageID 810-11.)

Plaintiff interprets the above-quoted explanation as meaning that ALJ Lesperance "asserts that the opinion of Dr. Evans … is 'possibly' not even a medical 'opinion' at all." (SE, Doc. No. 11 at PageID 1408.) Building upon this interpretation, Plaintiff argues

---

[6] Magistrate Judge Jolson wrote: "Though Plaintiff makes several arguments about how the ALJ evaluated Dr. Evans' opinion, Plaintiff focuses most on her ability to understand complex instructions in a work setting under stress…. Likewise focusing on that limitation, the Undersigned agrees that the ALJ's evaluation was insufficient." (AR, Doc. No. 8-9 at PageID 669).) Although Magistrate Judge Jolson referred to a single "limitation," she thereafter referenced (and rejected) ALJ Winfrey's analysis of Dr. Evans' opinion about Plaintiff's ability to "perform complex instructions," as well as her opinion regarding Plaintiff's "problems handling work pressures and stressors" constituted reversible error. (*Id.* at PageID 670-71.) The Court therefore finds that Magistrate Judge Jolson directed the ALJ to reconsider **both** of these limitations upon remand.

that the ALJ erred by failing to recognize "that Dr. Evans' opinion is indeed a medical opinion which must be evaluated in accordance with 20 C.F.R. § 404.1520c." (*Id*.)

The Court disagrees with Plaintiff's proffered interpretation. As an initial matter, the ALJ correctly observed that several statements in Dr. Evans' report—including her statement that Plaintiff had a high school education, Plaintiff's self-report that she was unsure whether she could perform complex tasks, and Plaintiff's ability to recall digits and complete a serial seven subtraction task—merely summarized the results of the evaluation and were not a "medical opinion" as defined in 20 C.F.R. § 404.1513. (Third ALJ Decision, Doc. No. 8-13 at PageID 811) (citing AR, Doc. No. 8-7 at PageID 440).)

Next, contrary to Plaintiff's argument, ALJ Lesperance both acknowledged and analyzed the persuasiveness of Dr. Evans' opinion regarding Plaintiff's ability to perform complex tasks. The ALJ found that Dr. Evans' opinion was supported by her "reference [to Plaintiff's] slower pace at some tasks, and possibly slight deficit on backward digit span (4 is normal, she did 3)." (Third ALJ Decision, Doc. No. 8-13 at PageID 810.) The ALJ compared this support to the normal findings that Dr. Evans documented, such as Plaintiff's ability to recall three out of three words and perform serial sevens testing, as well as her high school education. (*Id.* at PageID 810-11.) The ALJ also considered the consistency of Dr. Evans' opinion with other evidence in the record, including but not limited to medical records that did "not indicate any cognitive deficits in terms of memory, attentiveness, alertness, or activity (see, generally, Exhibits 3F, 4F, 6F, 8F, 14F, 20F….)." (*Id.* at PageID 811.) The ALJ also reasoned that Dr. Evans' statement was "speculative" and apparently made "[without] confidence," because Dr. Evans said that

27

Plaintiff's ability to perform complex tasks "could be" compromised. (*Id*. at PageID 811.) The ALJ further explained that Dr. Evans' opinion was "of limited utility" because it did not use programmatic terms and did not state whether Plaintiff could perform other simple or detailed tasks." (*Id.*) The ALJ's analysis of this area of mental functioning complied with the applicable regulations and is supported by substantial evidence.

Turning to Dr. Evans' opinion that Plaintiff's mental symptoms would "make it unlikely that she would be able to deal with stress and pressures effectively," ALJ Lesperance addressed this opinion in her assessment of the fourth functional area (adapting or managing oneself) and concluded that it was "not persuasive." (Third ALJ Decision, Doc. No. 8-13 at PageID 812-13.) The ALJ acknowledged that Dr. Evans' opinion was supported by the psychologist's reference to Plaintiff's "statements and reported symptoms," as well as the fact that Plaintiff was tearful during the consultative evaluation. (*Id.* at PageID 812.) However, the ALJ found that the record was inconsistent with Plaintiff's reported symptoms because her "mood, affect, alertness, orientation, and other variable mental status findings are overwhelmingly normal throughout the record." (*Id.* at PageID 813.) Further, "[t]he objective evidence in the record typically showed [Plaintiff] to have appropriate grooming and hygiene, no problem getting along well with providers and staff, normal mood and affect, and no problems with temper control." (*Id.*) In addition, Plaintiff's treatment history and activities of daily living were inconsistent with Dr. Evans' opinion. (*Id.*) The ALJ's analysis of this area of mental functioning also complied with the applicable regulations and is supported by substantial evidence.

28

**IT IS THEREFORE ORDERED THAT**:

1.  Plaintiff's Statement of Errors (Doc. No. 11) is OVERRULED;

2.  The Court AFFIRMS the Commissioner's non-disability determination; and

3.  The case is terminated on the Court's docket.

*s/ Caroline H. Gentry*

Caroline H. Gentry
United States Magistrate Judge